IN THE UNITED STATES DISTRICT COURT
FOR MONTANA

FILED

MAR - 3 2017

Clerk, U.S. Courts
District Of Montana
Butte Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH: | |
| (406) 861-5088, AT&T GOPHONE, KNOWN TO BE ASSOCIATED WITH ROBERT DAVID LINN, JR. | Case No. MJ-17-8- GF-JTJ<br><br>**Filed Under Seal** |
| THAT IS STORED AT PREMISES CONROLLED BY AT&T MOBILITY LLC. | |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Tavia C. Hulme, being first duly sworn, hereby depose and state as

follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant

for information associated with certain accounts that are stored at premises owned,

maintained, controlled, or operated by AT&T Mobility LLC, a wireless provider

headquartered at Atlanta, Georgia.  The information to be searched is described in

the following paragraphs and in Attachment A.  This affidavit is made in support

of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A)

and 2703(c)(1)(A) to require AT&T Mobility LLC to disclose to the government

records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.     I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI), and have been since September 2001. In addition to my experience as an HSI Special Agent, I received a Bachelor of Arts degree from the University of Great Falls in May 2001. I am presently assigned to the Russell Country Drug Task Force in Great Falls, Montana, and have been so assigned for approximately two years. I have been involved in a number of investigations involving narcotics and have received training in this area. I have participated in numerous seizures of methamphetamine and subsequent arrests. I have also spoken with and have been advised by other agents regarding narcotics investigations and their investigative techniques.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C §§ 841 and 846 have been committed by Robert David LINN, Jr. There is also probable cause

2

to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5.     On December 30, 2015, the Russell Country Drug Task Force (RCDTF) initiated an investigation into the drug trafficking and distribution activities of Robert David LINN, Jr. following a probation search of the residence of Myron BROWN located at 1607 7th Avenue Northeast, Great Falls, Montana. BROWN admitted that during the past two months, he had distributed ounce quantities of methamphetamine on a weekly basis for LINN.  BROWN further stated that LINN had four individuals distributing narcotics, under LINN's direction.

6.     Subsequent interviews of cooperating defendants and confidential informants identified the four main individuals distributing the narcotics for LINN as Ronald Dean BROMLIE, David Alan NELSON, Jesse Alan LEWIS, and Myron Homer BROWN.  A criminal history search of Robert David LINN, Jr. revealed two previous federal narcotics related convictions

7.     Between October 19, 2016, and January 12, 2017, HSI and the RCDTF, utilizing a HSI Undercover Agent (UCA), conducted five (5) controlled purchases of methamphetamine from Cari Ann MARTIN, a member of the Robert

3

David LINN, Jr. organization. Arrangements made between the UCA and

MARTIN to facilitate the controlled purchases of narcotics were made through text

messages and voice telephone calls. Based on telephone tolls, text messages

recovered pursuant to search warrant, and physical surveillance, agents believe

LINN supplied MARTIN with the methamphetamine for these controlled

purchases.

8.      During the controlled purchase of narcotics on January 12, 2017, the

HSI UCA arranged the controlled purchase with MARTIN through telephone calls

and text messages. At approximately 1205 hours, the UCA drove to MARTIN's

residence at 725 2nd Avenue South, Great Falls, MT and called MARTIN to let

her know the UCA was there. MARTIN came down to the UCA vehicle.

9.      MARTIN explained to the UCA that she takes care of a few different

people by helping them bond out of jail, and she also explained how she takes care

of day to day problems for these people. Martin further explained that she has to

take care of "Bob," who she said is "my big guy" and she does everything for him.

MARTIN said they were still dealing and explained that she thought they were

shutting down, but her supplier (referring to "Bob"), just wanted her to stop selling

smaller quantities. MARTIN said bigger quantities, like what she was selling to

the UCA, were preferable because less people come around. MARTIN provided

the UCA with two baggies that appeared to contain approximately two ounces of

4

methamphetamine. Based on the conversation between the UCA and MARTIN, agents believe MARTIN received this methamphetamine from LINN. The methamphetamine weighed 53.26 grams and showed a presumptive positive test for methamphetamine.

10.     On February 22, 2017, after months of investigation, HSI applied for and obtained an Order Authorizing the Interception of Wire and Electronic Communications for a telephone number associated with Robert David LINN, Jr. This order was signed by United States District Judge Brian Morris in the United States District Court for the District of Montana.

11.     On February 27, 2017, the Title III Wire Intercept for (406) 403-3383, known to be utilized by Robert David LINN, Jr. was activated. At approximately 1640 hours that day, an incoming telephone call (reference call #27) was received from (480) 257-9842, subscribed to by Carlos ORTIZ. Agents have previously identified this telephone number as being connected to LINN's source of methamphetamine supply in Arizona. During the call, a Hispanic sounding male greeted "Bob." "Bob" immediately stated that he would call him right back and the call was terminated. For the remainder of the evening, no further incoming or outgoing telephone calls were made between (406) 403-3383 and (480) 257-9842.

12.     Through telephone toll analysis, telephone number (406) 861-5088 was previously identified as being associated with Robert David LINN, Jr. The

5

DEA Billings Resident Office had issued Controlled Substance Subpoenas to AT&T Mobility LLC for subscriber and call detail records associated with telephone number (406) 861-5088.  Analysis of the records provided by AT&T Mobility LLC for (406) 861-5088 indicated a similarity in overall contact patterns and frequency of calls as compared to the analysis for (406) 403-3383, including previously identified members of the Robert David LINN, Jr. drug trafficking organization (DTO).  The call patterns identified with telephone number (406) 861-5088 are similar, if not almost identical, to records obtained for the Target Telephone (406) 403-3383, associated with the active Title III wire and electronic intercept.

13.     On February 28, 2017, a Controlled Substance Subpoena was issued to AT&T Mobility LLC for records associated with telephone number (406) 861-5088, believed to be utilized by LINN.  Records received from AT&T indicate that the telephone is a pre-paid AT&T Go Phone, for which no subscriber details are required at the time of activation.  Records also indicated that the telephone was activated on January 22, 2017.

14.     Records received from the PEN data associated with the Title III Intercept, (406) 403-3383, listed an incoming call at 16:39 hours from (480) 257-9842 (the number associated with Carlos ORTIZ).  In addition, the subpoena records obtained from AT&T Mobility LLC for telephone number (406) 861-5088

listed an outgoing telephone call at 16:40 hours to (480) 257-9842 that lasted

approximately 12 minutes in duration.

     15.    Analysis of the telephone records received from AT&T Mobility LLC

associated with telephone number (406) 861-5088, listed twenty-four (24)

incoming and outgoing text messages to (480) 257-9842, from January 26, 2017, to

February 14, 2017.

     16.    Throughout the investigation, Robert David LINN, Jr., has been

identified utilizing various cellular telephones, some subscribed to alias names and

some pre-paid cellular telephone where no subscriber details are required.

     17.    In my training and experience, I have learned that AT&T Mobility

LLC is a company that provides cellular telephone access to the general public,

and that stored electronic communications, including retrieved and unretrieved

voicemail, text, and multimedia messages for AT&T Mobility LLC subscribers

may be located on the computers of AT&T Mobility LLC.  Further, I am aware

that computers located at AT&T Mobility LLC contain information and other

stored electronic communications belonging to unrelated third parties.

     18.    Wireless phone providers often provide their subscribers with

voicemail services.  In general, a provider will store voicemail messages on behalf

of a particular subscriber until the subscriber deletes the voicemail.  If the

subscriber does not delete the message, the message may remain in the system of AT&T Mobility LLC for weeks or months.

19.     Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by AT&T Mobility LLC for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

20.     Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular

8

telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

21.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

9

22.     Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

23.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

10

24.    In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

25.    As explained below, information stored at the wireless provider, including that described above, may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the data pertaining to a particular cellular device that is retained by a wireless provider can indicate who has used or controlled the cellular device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, data collected at the time of account sign-up, information relating to account payments, and communications (and the data associated with the foregoing, such as date and time) may indicate who used or controlled a cellular device at a relevant time. Further, such stored electronic data can show how and when the cellular device and associated cellular service

11

were accessed or used. Such "timeline" information allows investigators to understand the chronological context of cellular device usage, account access, and events relating to the crime under investigation. This "timeline" information may tend to either inculpate or exculpate the cellular device owner. Additionally, information stored by the wireless provider may indicate the geographic location of the cellular device and user at a particular time (e.g., historic cell-site location information; location integrated into an image or video sent via text message to include both metadata and the physical location displayed in an image or video). Last, stored electronic data may provide relevant insight into the state of mind of the cellular device's owner and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

26.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require AT&T Mobility LLC to

12

disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

27.    Based on the forgoing, I request that the Court issue the proposed search warrant.

28.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

29.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

30.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order

of the Court.  These documents discuss an ongoing criminal investigation that is

neither public nor known to all of the targets of the investigation.  Accordingly,

there is good cause to seal these documents because their premature disclosure

may give targets an opportunity to flee/continue flight from prosecution, destroy or

tamper with evidence, change patterns of behavior, notify confederates, or

otherwise seriously jeopardize the investigation.

Respectfully submitted,

Tavia C. Hulme
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on _March 3_____, 2017

HONORABLE JOHN T. JOHNSTON
UNITED STATES MAGISTRATE JUDGE

14